IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| BRUCKNER TRUCK SALES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ISABEL GUZMAN, *et al.*, <br><br> Defendants. | 2:23-CV-097-Z |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Summary Judgment ("Motion") (ECF No. 4), filed June 8, 2023, and Defendants' Cross-Motion for Summary Judgment ("Cross-Motion") (ECF No. 27) filed October 10, 2023. Having reviewed the motions, briefing, and relevant law, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendants' Cross-Motion.

**BACKGROUND**

The Small Business Administration ("SBA") provides financing to small businesses through private "Section 7(a) loans" under the Small Business Act. *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 408–09 (2d Cir. 2022). In March of 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), "a provision of which — known as the Paycheck Protection Program ('PPP') — authorized the SBA to guarantee loans to businesses with fewer than 500 employees."[1] *OTO Analytics, Inc. v. Cap. Plus Fin., LLC*, No. 3:21-CV-2636-B, 2022 WL 1488441, at *1 (N.D. Tex. May 11, 2022); *see also* 15 U.S.C. § 636(a)(36). That PPP loan program fell under the SBA's Section 7(a) loan program. This case concerns one such loan.

---

[1] "This extraordinary act required a comprehensive plan to disburse billions of dollars to countless businesses in a very short window of time." *Greathouse v. Cap. Plus Fin. LLC*, No. 4:22-CV-0686-P, 2023 WL 5759250, at *1 (N.D. Tex. Sept. 6, 2023). "Because of the logistical challenges that approving loans for millions of American businesses presented, the government worked with private lenders to streamline the approval process." *Id.*

Plaintiff is a retail truck dealer in Amarillo. ECF No. 5 at 7. Like many other businesses, it participated in the PPP during the COVID-19 pandemic. *Id.* In early 2020, Plaintiff "applied for a loan from Amarillo National Bank, which determined that Bruckner was eligible and issued an SBA-guaranteed loan." *Id.* at 6. Plaintiff used that loan to cover business expenses, and — after having spent it in its entirety — submitted a loan forgiveness application. *Id.* at 6–7. But Plaintiff's application was denied.

In denying Plaintiff forgiveness, the SBA relied on an interim final rule ("Loan Review IFR") that allows it to "assess whether a borrower was eligible for the PPP" as part of the determination whether to forgive the loan. ECF No. 28 at 8. If the borrower is found ineligible, loan forgiveness can be denied "even if the borrower had . . . obtained a loan from a private lender," "applied for guarantee to SBA," and "received a loan number." *Id.*; *see also* 85 Fed. Reg. 33010.

That is what happened here: "[the] SBA denied forgiveness of Bruckner's PPP loan because the agency concluded that Bruckner, with 942 employees," was "not eligible for such a loan, given that the CARES Act allows PPP loans only for business entities with fewer than 500 employees." ECF No. 28 at 28. Plaintiff now sues under the Administrative Procedure Act ("APA") arguing that the SBA entirely lacked authority to consider — at the loan forgiveness stage — its eligibility for the loan. Plaintiff contends (1) that the SBA's forgiveness-stage assessment of eligibility violates the CARES Act, and (2) that such an assessment constitutes an impermissibly retroactive application of the Loan Review IFR to Plaintiff's loan. ECF Nos. 5 at 7; 28 at 9.

**LEGAL STANDARDS**

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Per the Fifth Circuit, summary judgment "is particularly appropriate in cases in which the court is

asked to review or enforce a decision of a federal administrative agency." *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214–15 (5th Cir. 1996). To prevail, the moving party bears the initial burden of demonstrating "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are considered "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Judicial review under the APA is limited to the administrative record. 5 U.S.C. § 706. Courts are compelled to "hold unlawful and set aside agency action[s]" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). While a reviewing court must apply this standard deferentially, the agency action must "be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). To assess whether an agency has acted arbitrarily or capriciously, a court should consider whether the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence[,]" or is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

ANALYSIS

1. **The SBA's forgiveness-stage assessment was not "arbitrary and capricious."**

   A. **Defendants' statutory construction is reasonable and warrants deference.**

Plaintiff claims the SBA's Loan Review IFR "contravenes the CARES Act" because Congress already decided that "eligibility for loan forgiveness depends on whether the applicant *in fact received* an SBA-guaranteed loan, not whether the applicant *should have received* an

SBA-guaranteed loan." ECF No. 5 at 6–7 (emphasis in original). Hence, Plaintiff concludes that the SBA "revisit[ing] loan issuance eligibility when determining loan forgiveness eligibility . . . flouts Congress's decision and exceeds its statutory authority." *Id.* at 7.

Defendants respond that the CARES Act's text establishing the PPP's provisions, when "considered together as a whole and viewed in combination with subsequent legislation," shows that the SBA "has ample authority at the forgiveness stage to assess a borrower's eligibility for a PPP loan." ECF No. 28 at 9. Hence, Defendants maintain that "[a] lender's decision to approve a PPP loan, relying on the borrower's self-certification that it was eligible for PPP relief, does not preclude [the] SBA at the forgiveness stage from reviewing the borrower's eligibility." *Id.* Plaintiff's position, they argue, "contradicts provisions of the CARES Act and subsequent legislation concerning PPP loans." *Id.*

As this is a question of statutory interpretation, the Court begins with the text of the statute. *United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 961 (5th Cir. 2019). If the text is unambiguous, the analysis ends there as well. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004); *United States v. Ary*, 892 F.3d 787, 789 (5th Cir. 2018). The "cardinal canon" of statutory interpretation requires courts to "presume . . . a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254 (1992). Here, the relevant text is found in the CARES Act's Section 1106 on "Loan Forgiveness":

> In this section — (1) the term "covered loan" means a loan guaranteed under paragraph (36) of Section 7(a) of the Small Business Act (15 U.S.C. 636(a)), as added by section 1102; . . . (6) the term "eligible recipient" means the recipient of a covered loan . . . .

CARES Act § 1106(a)(1), (6); *see also* 15 U.S.C. § 636m.[2]

---

[2] The CARES Act established the PPP loan program by amending Section 7(a) of the Small Business Act. These provisions can also be found at 15 U.S.C. § 636m.

Plaintiff focuses its argument almost exclusively on the definition of "eligible recipient." In its view, "Bruckner's eligibility for loan forgiveness is indisputable" because it *has* a PPP loan, and an "eligible recipient" is merely "the recipient of a covered loan." ECF No. 5 at 20. "In effect," Plaintiff concludes, "the [Loan Review IFR] replaces the definition of 'eligible recipient' in Section 636m ('the recipient of a covered loan') with the separate definition of that term in Section 636(a)(36) (a business with a certain number of employees)." ECF No. 5 at 21.

But this Court has a "duty to construe statutes, not isolated provisions." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010). Accordingly, provisions "must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023). "We seek to interpret a statutory provision as part of a symmetrical and coherent regulatory scheme." *JetPay Corp. v. United States Internal Revenue Serv.*, 26 F.4th 239, 242 (5th Cir. 2022) (internal marks omitted). "The most grammatical reading of a sentence in a vacuum does not always produce the best reading in context." *Yellen v. Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. 2434, 2448 (2021).

CARES Act Section 1106(a)(6) states that "the term 'eligible recipient' means the recipient of a covered loan." Section 1106(a)(1), in turn, defines a "covered loan" as "a loan *guaranteed under* paragraph (36) of Section 7(a) of the Small Business Act[.]" (emphasis added). Hence, understanding what the term "covered loan" means — and the authority and terms to which it is subject — requires understanding what the phrase "guaranteed under" means. Plaintiff reads "guaranteed under" to mean "by reason of the authority of." ECF No. 33 at 13. But Defendants contend that the "more natural reading" of the phrase is "subject to" or "inferior or subordinate to" the provisions of Section 636(a)(36), which "include the provision that limits PPP program

5

eligibility to 'small businesses' defined as organizations that employ fewer than '500 employees.'" ECF No. 34 at 7–8 (quoting 15 U.S.C. § 636(a)(36)(D)).

The Supreme Court interpreted similar language in *Pereira v. Sessions*. 138 S. Ct. 2105 (2018). There, the Court confronted a statutory rule (the "stop-time" rule) used for calculating a non-citizen's "continuous physical presence" in the United States. *Id.* at 2110. The relevant statute — there, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 — states that "any period of . . . continuous physical presence" is "deemed to end . . . when the alien is served a notice to appear *under* section 1229(a)," where the notice-to-appear provision required specification of, *inter alia*, "[t]he time and place at which the [removal] proceedings will be held." *Pereira*, 138 S. Ct. at 2107 (emphasis added).

Defendants note that, in rejecting the position that a notice to appear lacking the "time and place" of a removal proceeding counted as a "notice to appear under" Section 1229(a) for purposes of the "stop-time" rule, the Court concluded that "the word 'under,' as used in the stop-time rule, clearly means 'in accordance with' or 'according to' because it connects the stop-time trigger in § 1229b(d)(1) to a 'notice to appear' that specifies the enumerated time-and-place information." *Id.* at 2109. Said differently, "the word 'under' provides the glue that bonds the stop-time rule to the substantive . . . requirements mandated by § 1229(a)." *Id.* at 2117; *see also* ECF No. 28 at 24.

So too here. For purposes of loan forgiveness, "the word 'under' provides the glue" that "connects" the loan forgiveness requirements in CARES Act Section 1106 with the loan origination provisions in CARES Act Section 1102 (15 U.S.C. § 636(a)). *See* ECF No. 28 at 24. Accordingly, if a PPP loan is granted to an ineligible borrower, that loan is not "guaranteed under" 15 U.S.C. § 636(a) because an ineligible borrower's loan is not "in accordance with" or "according to" the governing statutes and the SBA's authoritative regulations interpreting those statutes. *Id.*

(quoting *Pereira*, 138 S. Ct. at 2117). And that is true regardless of whether the ineligibility stems from a violation of a statutory eligibility requirement (*e.g.*, an applicant business employing more than 500 employees, *see* 15 U.S.C. § 636(a)(36)(D)) or a regulatory one.

Plaintiff's statutory analysis fails to adequately address this "guaranteed under" language — to the extent it addresses it at all. Rather, Plaintiff effectively assumes that all loans made — regardless of the borrower's *actual* eligibility — are "covered loans" that immediately qualify the borrower for forgiveness. *See* ECF No. 5 at 20 ("Bruckner is an 'eligible recipient' because it is 'the recipient of a covered loan.'"). In other words, Plaintiff's position would preclude the SBA from denying forgiveness *even* to borrowers who obtained their loans via intentional misrepresentations and omissions, so long as those borrowers fulfilled the other statutory requirements. That interpretation runs contrary to the statutory text and the logic that supports it.

Moreover, Plaintiff's position is incompatible with the fact that Congress located the PPP in Section 7(a) — *within* the SBA's pre-existing loan authority — thereby making the SBA responsible for investigating, reviewing, maintaining, and creating rules protecting the program's integrity. *See* A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012) ("[T]he whole-text canon . . . calls on the judicial interpreter to consider the entire text, in view of its structure *and of the physical and logical relation of its many parts*," as "[t]he entirety of the document thus provides the context for each of its parts.") (emphasis added); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (courts must look to "the language and *design* of the statute as a whole") (emphasis added); *see also* 15 U.S.C. § 634(b)(6) (the SBA is authorized to "make such rules and regulations as" the agency "deems necessary" to implement the PPP); 15 U.S.C. § 634(b)(7) (the SBA may create rules and "take any and all actions" when it "determines such actions are necessary or desirable" in "dealing with" loans); 15 U.S.C.

7

§ 634(b)(11) (the SBA must "make such investigations as [the agency] deems necessary to determine whether a recipient" of "any assistance under this chapter . . . has engaged . . . in any acts" constituting a "violation of . . . this chapter" or of "any order issued under this chapter.").

Hence, accepting Plaintiff's argument would require this Court to "attribute to Congress an intention to render a statute . . . internally inconsistent." *Jones v. Hendrix*, 599 U.S. 465, 479 (2023); *see also Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) ("[W]e interpret provisions of a statute in a manner that renders them compatible, not contradictory."); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into a[] harmonious whole.") (citations and internal marks omitted).

Subsequent legislation further undermines Plaintiff's proffered interpretation.[3] After the SBA announced, via its Loan Review IFR, that it would examine borrower eligibility at the loan forgiveness stage, "the same Congress that passed the CARES Act passed the Consolidated Appropriations Act of 2021." *U.S. Small Bus. Admin. v. Weather King Heating & Air, Inc.*, 648 B.R. 200, 209 (N.D. Ohio 2023); *see also* Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, 134 Stat. 1182 (2020) ("CAA"). That statute forbade the SBA from requiring certain forgiveness applicants (those seeking $150,000 or less) to submit documentation beyond one page containing specified certifications, but did not even purport to restrict SBA's authority to review, audit, or modify forgiveness of loans *over* $150,000 — the SBA's approach was left completely untouched. *See* CAA 2021, Div. N, § 307(a)(3) (adding 15 U.S.C. § 636m(*l*)(1)(A), (B)).

---

[3] To be clear, there is a difference between arguments based on subsequent *legislation* and subsequent legislative *history*. The former is readily accepted by originalist and textualist judges. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000) ("Reading the FDCA as a whole, *as well as in conjunction with Congress' subsequent tobacco-specific legislation*, it is plain that Congress has not given the FDA the authority that it seeks to exercise here.") (emphasis added). Subsequent legislative *history*, however, does not enjoy this support. *See Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990) (Scalia, J., concurring in part) ("Arguments based on subsequent legislative history, like arguments based on antecedent futurity, should not be taken seriously, not even in a footnote.").

8

It is well established that "Congress can be presumed to be aware of relevant administrative interpretations when enacting or amending a statute," *Duarte v. Mayorkas*, 27 F.4th 1044, 1059 (5th Cir. 2022); *see also Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.") and that "[w]hen Congress provides exceptions in a statute . . . [t]he proper inference . . . is that Congress considered the issue of exceptions" and "limited the statute to the ones set forth," *United States v. Johnson*, 529 U.S. 53, 58 (2000); *see also Parada v. Garland*, 48 F.4th 374, 377 (5th Cir. 2022). Hence, the CAA represents Congress's affirmative decision to ratify the SBA's conclusion that it had statutory authority to assess borrower eligibility at the loan forgiveness stage. *See Abbott v. United States*, 562 U.S. 8, 21 (2010) ("We are disinclined to say that what Congress imposed with one hand . . . it withdrew with the other . . . .") (quoting *Logan v. United States*, 552 U.S. 23, 24 (2007)).

Lastly, Plaintiff's argument treats the PPP as if it were *really* a grant program. It is not. *See Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 423 (2d Cir. 2022) ("[T]he substance of the PPP conclusively demonstrates that it is, as described, a loan guaranty program, not a grant program."). In *Springfield*, the Second Circuit addressed the CARES Act and debtors who were denied PPP funds due to their bankruptcy status. *Id.* at 408. And it held, *inter alia*, that loan forgiveness "is neither automatic nor guaranteed," and that forgiveness is only granted "if specified criteria are met" — criteria with "several additional conditions." *Id.* at 424 ("For example, funds are not forgivable if the employer does not spend a minimum amount" directly "on payroll expenses" and the forgivable amount is reduced if "salaries are decreased by more than 25%.").

At least one of those "conditions" is met here. *See* 15 U.S.C. § 636(a)(36)(D) ("[A]ny business concern . . . shall be eligible to receive a covered loan if the business concern . . . employs

not more than . . . 500 employees."); *see also* ECF No. 28 at 28 ("[The] SBA denied forgiveness of Bruckner's PPP loan because the agency concluded that Bruckner, with 942 employees, is not eligible for such a loan, given that the CARES Act allows PPP loans only for business entities with fewer than 500 employees."). And while the Second Circuit's precedent is non-binding, it is persuasive — and it supports concluding that Defendants' statutory construction is reasonable. At the least, Defendants' interpretation is clearly far from "arbitrary and capricious," and therefore warrants deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). No other arguments advanced by Plaintiff convinces the Court otherwise.

### B. Defendants' Loan Review IFR does not impermissibly "re-delegate" authority to the SBA's non-lender agents.

Plaintiff next argues that "[f]or purposes of making covered loans," it is "*lender[s]*," not SBA employees, who are "delegated authority by the Administrator." ECF No. 5 at 22 (citing CARES Act § 1102(F)(ii)(I)) (emphasis in original). And indeed, that provision reads:

> (I) IN GENERAL. — For purposes of making covered loans for the purposes described in clause (i), a lender approved to make loans under this subsection shall be deemed to have been delegated authority by the Administrator to make and approve covered loans, subject to the provisions of this paragraph.

CARES Act § 1102(F)(ii)(I); *see also* 15 U.S.C. § 636(a)(36)(F)(ii)(I). Hence, "SBA's new rules," Plaintiff argues, "contradict that provision by purporting to re-delegate the authority to determine eligibility for an SBA-guaranteed loan to SBA's non-lender agents." *Id.*

In response, Defendants acknowledge that, "[a]s is often true with other forms of Section 7(a) lending," eligible borrowers "obtained PPP loans by filing applications with private lending institutions," which "lend their own funds to qualifying borrowers, subject to an SBA guarantee." ECF No. 28 at 25. But Defendants contend that Plaintiff "identifies no authority or textual hook for the notion that once a lender decided to approve a PPP loan (relying on a self-certification of

eligibility)" such a decision "precluded [the] SBA from reaching a different conclusion at the forgiveness stage." *Id.* And they contend that Plaintiff's argument "is incompatible with Section 634(b)(11), which charges SBA with the responsibility to conduct investigations and audits — statutes Congress left in place as to PPP loans." *Id.* Hence, in Defendants' view, the challenged delegation neither "purport[s] to override" — nor contradicts — "any of those statutes." *Id.*

The Court agrees with Defendants' analysis. Moreover, Plaintiff's argument clashes with long-held background principles of administrative law — principles that concern governmental delegations of authority to subordinated agency personnel. This Circuit has repeatedly acknowledged the "general proposition" that, where government agencies are concerned, "the head of an administrative agency has the power to review and revise acts of subordinates where," as here, "the powers in question are vested in the subordinate under the supervision and direction of the superior or the power to administer is vested in the superior." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1388 (5th Cir. 1979); *see also Morrow v. Clayton*, 326 F.2d 36, 45–46 (10th Cir. 1963) (citing *Knight v. United Land Association*, 142 U.S. 161 (1891)).

The mere fact that the CARES Act delegated loan origination decisions to private lenders does not suggest the SBA lacks authority to review those decisions. On the contrary, the "head of an agency *retains* the authority to make final decisions for the agency even if he or she delegates the authority to make these decisions to his or her subordinates." *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 9–10 (D.D.C. 2000) (emphasis added); *see id.* at 10 (concluding authorization of subordinate "to take certain actions does not deprive his superiors of their authority to make final decisions for the agency in certain cases"). And at no point here did Congress or the SBA confer "sole decisional authority" on private lenders. *Chevron Oil Co.*, 588 F.2d at 1388. "To hold otherwise would create havoc in the administration of our laws." *Id.*

### 2. The SBA's forgiveness-stage assessment of Plaintiff's eligibility via its Loan Review IFR was not impermissibly retroactive.

Plaintiff next claims that, "even assuming [the] SBA has the authority to deny loan forgiveness based on a finding of ineligibility, it had no power to apply that rule retroactively to Bruckner." ECF No. 5 at 19. "Because the retroactive application of regulations can produce harsh and unfair results," Plaintiff argues, "agencies may apply their rules retroactively only when Congress has clearly permitted them to do so." *Id.* And Plaintiff claims that "[r]etroactively applying" the SBA's Loan Review IFR "violated the Due Process Clause because it was 'harsh,' 'oppressive,' 'arbitrary,' and 'irrational.'" *Id.* at 27 (citing *United States v. Carlton*, 114 S. Ct. 2018, 2022 (1994)).

Defendants respond that Plaintiff's retroactivity claims are meritless because "[t]he Loan Review IFR simply explained what the CARES Act and the Small Business Act already provided" — namely, "that to obtain loan forgiveness applicants had to be eligible for their PPP loans in the first place," and "that SBA had authority to conduct necessary and appropriate inquiries to ensure recipients' compliance with that requirement." ECF No. 28 at 36. Hence, Defendants conclude that "the Loan Review IFR had no retroactive effect when applied to Bruckner's PPP loan" because it merely stated "what pre-existing law already provided." *Id.*

Plaintiff's arguments fall short. First, Plaintiff cites *Bowen v. Georgetown Univ. Hosp.* for the proposition that "[r]etroactivity is not favored in the law." 488 U.S. 204, 208 (1988); ECF No. 5 at 24. And Plaintiff notes, correctly, that courts "mitigate the unfairness of retroactive regulation by applying a clear-statement rule: 'a statutory grant of legislative rulemaking authority will not [generally] be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.'" ECF No 5 at 24; *Bowen*, 488 U.S. at 208. But the question here is whether the SBA's Loan Review IFR is retroactive to begin with. It is not.

The Fifth Circuit has recognized that "[i]f an interpretative regulation merely clarifies what the language of the statute was intended to convey, it is ultimately misleading to term it retroactive." *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 985 n.30 (5th Cir. 1977). Such a regulation "constitutes only a step in the administrative process" and "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand." *Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 135 (1936). That is the case here: the Loan Review IFR merely informed borrowers of the SBA's understanding that "eligible recipient" under 15 U.S.C. § 636m(a)(10) means a recipient that was eligible for its loan under 15 U.S.C. § 636(a)(36)(A)(iv). It did not constitute "new law." *Anderson, Clayton & Co.*, 562 F.2d at 985 n.30 ("Whenever interpretative rules . . . make new law, retroactive law making should be . . . unprejudiced by the false notion that results never flow from the interpreter.").

Furthermore, the Loan Review IFR relied on — and *advised* borrowers of — the SBA's *pre-existing* statutory authority: "The Small Business Act authorizes the Administrator to conduct investigations to determine whether a recipient or participant in any assistance under a [Section] 7(a) program, including the PPP, is ineligible for a loan[,]" and to "take any and all actions . . . with respect to [Section 7(a)] loans." 85 Fed. Reg. 33010, 33011–12 (June 1, 2020) (internal citations omitted). As discussed *supra*, that pre-existing statutory authority permits the SBA to "make such investigations as [the agency] deems necessary to determine whether a recipient" of "any assistance under this chapter" has engaged "in any acts or practices" constituting "a violation of any provision of this chapter, or of any rule or regulation under this chapter."). 15 U.S.C. § 634(b)(11). It also permits the taking of "any and all actions" when the agency "determines such actions are necessary or desirable in making, servicing, compromising, modifying," or "dealing with or realizing on loans made under the provisions of this chapter." 15 U.S.C. § 634(b)(7).

And because "this chapter" in the foregoing provisions refers to Chapter 14A of the Small Business Act, borrowers received PPP loans subject to that authority — authority to investigate and determine eligibility and take actions to ensure statutory compliance. *See Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 227 (2d Cir. 2021) ("[T]he PPP was not created as a standalone program but was added into the existing § 7(a) program," subjecting it to existing "regulations, as well as existing SBA authority."). As Defendants put it, "[t]he Loan Review IFR made no new law simply by reminding borrowers of that consequence." ECF No. 28 at 37; *see also* ECF No. 34 at 20. This Court agrees.

Lastly, Plaintiff argues that "[r]etroactively applying [the] SBA's rule to Bruckner's loan violated the Due Process Clause because it was 'harsh,' 'oppressive,' 'arbitrary,' and 'irrational.'" ECF No. 5 at 27 (citing *Carlton*, 114 S. Ct. at 2022). In its view, the government "induced Bruckner to participate in the [PPP] by offering favorable terms, including the availability of loan forgiveness for borrowers who spent the loan proceeds on payroll." *Id.* "By changing positions," Plaintiff argues, "SBA undermined Bruckner's legitimate and settled financial planning." *Id.* "Bruckner reasonably understood that it would not have to repay its PPP loan so long as it spent the money on payroll (which it did)" and "would not have accepted the loan" otherwise. *Id.*

However, Plaintiff's sole authority for its Due Process claims is *United States v. Carlton*, a case that concerned a statute that *was* retroactive in application and effect. 114 S. Ct. 2018, 2020 ("Congress provided that the amendment would apply retroactively . . . . The question presented . . . is whether the retroactive application of the amendment violates the Due Process Clause."). *Carlton* is therefore inapplicable because this Court has already held — for the reasons *supra* — that the Loan Review IFR is *not* retroactive. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 269 (1994) ("A statute does not operate 'retrospectively' merely because it is applied in a case arising

from conduct antedating the statute's enactment . . . or upsets expectations based in prior law.") (citing *Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 100 (1992) (Thomas, J., concurring in part and concurring in judgment)).

Moreover, to the extent that *Carlton* does apply, it helps Defendants' case. *Carlton* held, *inter alia*, that "a tax statute's retroactive application must be supported by a legitimate legislative purpose furthered by rational means." *Id.* One such "legitimate legislative purpose" is "to prevent . . . unanticipated revenue loss." *Id.* So too here. The Loan Review IFR sought to prevent the "unanticipated revenue loss" of forgiving ineligible borrowers' improperly issued PPP loans. That is "neither illegitimate nor arbitrary." ECF No. 28 at 39 (quoting *Carlton*, 114 S. Ct. at 2023). And this Court ultimately agrees with Defendants that "[a]pplying routine administrative tools that have long been at the agency's disposal, to ensure that the benefits of a federally funded program 'are directed to the entities Congress intended,' . . . is not so 'harsh and oppressive as to transgress [any] constitutional limitation.'" *Id.* (quoting 85 Fed. Reg. at 33012; *Carlton*, 114 S. Ct. at 2022). None of Plaintiff's other arguments convinces the Court otherwise.

CONCLUSION

Neither the SBA's actions regarding Plaintiff nor its Loan Review IFR is unlawful, arbitrary, capricious, in excess of statutory authority, retroactive, or violative of Due Process. Because Plaintiff is not entitled to the relief it seeks, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendants' Cross-Motion.

**SO ORDERED**.

December 12, 2023

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE